IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC W., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 22 C 3894 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eric W.[1] seeks to overturn the Commissioner of Social Security Administration's decision denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Eric requests reversal and remand [15], and the Acting Commissioner moves for summary judgment affirming the decision [20][21]. For the reasons discussed below, the Court affirms the ALJ's decision.

**Background**

Eric, currently 55 years old, filed an SSI application on April 1, 2019, alleging an onset date of August 2, 2010. R. 13. At the hearing, Eric amended the onset date to April 1, 2019. *Id.* at 38. Eric completed high school in 1986 and previously worked installing auto glass. *Id.* at 225. Eric alleged disability due to degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral ankles, deep vein thrombosis, systemic lupus erythematosus ("lupus"), dyscognitive seizure disorder, traumatic brain injury, hypertension, obesity, generalized anxiety

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by first name and the first initial of last name or alternatively, by first name.

disorder and major depressive disorder. *Id.* at 15-16, 60; Doc. [15] at 5-6. Treatment included therapy and various prescription medications. R. 21-27.

Eric's claims were initially denied on December 4, 2019, and upon reconsideration on December 7, 2020. *Id.* at 13. Upon written request, on January 25, 2021, the ALJ held a telephonic hearing, attended by Eric, counsel, and vocational expert ("VE") John Puloman. *Id.* at 13, 36. On September 9, 2021, the ALJ found Eric not disabled. *Id.* at 13-29. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ found Eric had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral ankles, deep vein thrombosis, lupus, dyscognitive seizure disorder, obesity, generalized anxiety disorder and major depressive disorder. *Id.* at 15-16. The ALJ also noted the objective medical record documented hypertension and a head injury secondary to a motorcycle accident. *Id.* However, as outlined in the ALJ's opinion, the limitations due to hypertension were non-severe and the alleged head injury did not establish a medically determinable impairment. *Id.* at 16. The ALJ concluded Eric did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* at 16-21. The ALJ specifically considered listings 1.15, 1.18 (for degenerative disc disease of the lumbar spine and degenerative joint disease of the bilateral ankles), 11.02 (for epilepsy or seizures), 14.02 (for lupus), as well as 12.04 and 12.06 (for mental impairments). *Id.* at 17-18. Under the "Paragraph B" analysis, the ALJ found Eric had moderate limitations in interacting with others, and concentrating, persisting or maintaining pace. *Id.* at 19-20. The ALJ found mild limitations in understanding, remembering, or applying information, and adapting or managing oneself. *Id*.

The ALJ then determined Eric had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) except the claimant: (1) can occasionally stoop, kneel, crouch and crawl; (2) can occasionally climb ramps and stairs; (3) can never climb ladders, ropes, or scaffolds; (4) should not be required to balance including walking on uneven surfaces; and (5) should avoid exposure to hazards such as dangerous moving machinery and unprotected heights. *Id.* at 21. For the mental aspects of the RFC, the ALJ found that Eric can: (1) understand, remember and carry out simple instructions in a routine work setting with few, if any, changes; (2) tolerate occasional interaction with co-workers or supervisors, but cannot participate in any collaborative, joint projects with co-workers or supervisors; and (3) cannot interact with the public. *Id.* After posing hypotheticals to the VE, the ALJ concluded Eric could perform light work with the required limitations, including cleaner-housekeeping, routing clerk, and marker. *Id.* at 28-29, 46-51. As a result, the ALJ found Eric not disabled. *Id.* at 29. The Appeals Council denied Eric's request for review. *Id.* at 1-3.

## Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform their former occupation; and (5) whether the claimant is unable to perform any other available work in light of their age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir.

3

2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of his request for reversal and remand, Eric argues the ALJ: (1) failed to properly evaluate the medical opinion evidence; and (2) erred in reviewing his subjective symptoms. Having considered these arguments and the record, the Court finds that the ALJ did not commit reversible error as the ALJ's decision is supported by substantial evidence.

**I. Evaluation of Medical Opinion Evidence**

For his first contention, Eric challenges the ALJ's evaluation of the medical opinion evidence. Eric claims the ALJ relied on the State agency's Disability Determination Services non-examining consultants ("DDS consultants") but omitted several of their opined psychological

4

limitations from the RFC without proper explanation.[2] Doc. [15] at 6-12; Doc. [22] at 3-9. Specifically, Eric alleges the ALJ excluded limitations that Eric could: (1) carry out one- or two-step instructions for a normal work period; and (2) would work best in a setting where employment-related social interactions are infrequent, brief, and largely task-specific. *Id.* The Court disagrees.

By way of background, the ALJ considered the opinions of DDS consultants Gayle Williamson, Psy. D., and Russell Taylor, Ph.D. R. 26-27 (*citing* 55-65, 67-89). The ALJ observed that Dr. Williamson found Eric had mild limitations in his ability to concentrate, persist, or maintain pace, and interact with others. *Id.* at 27 (*citing* 60). Comparatively, the ALJ recognized that Dr. Taylor found Eric had a moderate limitation in both areas. *Id.* (*citing* 77-78). Specifically, the ALJ asserted that Dr. Taylor found Eric capable of understanding, remembering, and concentrating sufficiently to carry out one- or two-step instructions, make simple work-related decisions, adapt to routine changes, and interact with others sufficiently in work setting with reduced social demands. *Id.* Dr. Taylor also indicated Eric would do best in a work setting where employment related social interactions are infrequent, brief, and largely task-specific verse collaborative. *Id.* (*citing* 86). The ALJ found Dr. Taylor's findings more persuasive than Dr. Williamson's, due to their consistency with Eric's testimony and his normal mental status examinations. *Id.* The ALJ also found that Eric can: (1) understand, remember and carry out simple instructions in a routine work setting with few, if any, changes; (2) tolerate occasional interaction with co-workers or supervisors, but cannot participate in any collaborative, joint projects with co-workers or supervisors; and (3) cannot interact with the public. *Id.* at 21.

---

[2] Eric is not challenging the physical RFC determination, nor is Eric challenging the opinions of other treating physicians.

The RFC is the "most physical and mental work the claimant can do on a sustained basis despite [their] limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). An ALJ must consider opinions from medical sources in forming the RFC. *See* 20 C.F.R. §§ 404.1545(a)(1), (3), 404.1527(d)(2). In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). An opinion from a medical source on a claimant's RFC may be rejected "with 'an accurate and logical bridge' between the evidence and the ALJ's decision." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020). An ALJ need not credit the opinions of the agency's own doctors in the face of other compelling evidence, "but rejecting the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (cleaned up); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But, an ALJ has the "final responsibility" for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2); *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). Additionally, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). "[An] ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023). Instead, an ALJ must minimally articulate their reasoning. *Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'").

6

First, Eric argues the ALJ purportedly relied on the opinion of Dr. Taylor but omitted his RFC limitation regarding Eric's ability to carry out one- or two-step instructions. Doc. [15] at 6-10; Doc. [22] at 3-8.[3] This argument lacks merit under the deferential standard when reviewing the ALJ's finding. Here, the ALJ minimally articulated their reasoning for omitting the RFC limitation that Eric could carry out one- or two-step instructions for a normal work period. The ALJ identified inconsistencies between testimony in function reports and the medical record. R. 19-20. Additionally, the ALJ detailed how the conflicting record evidence led to their mental RFC determination. *Id.* at 25-26. First, the ALJ reviewed function reports from F. Anthony Manella at Midwest Disability and Eric's partner Barbara Martinek. *Id.* at 19 (*citing* 249, 252, 302, 305, 315, 318). These reports noted Eric required daily reminders to take medication. *Id.* Ms. Martinek's reports also stated Eric often had trouble concentrating for more than 10- to 15-minute intervals. *Id.* at 19 (*citing* 305, 318). However, the ALJ discovered contradictory statements within these reports, indicating Eric retained mental capacity for memory and concentration. *Id.* at 19-20. For example, the ALJ explained that the Manella function report stated Eric watched television, fed and cared for his cat, prepared meals daily, drove, and grocery shopped. *Id.* at 20 (*citing* 246-54). It also asserted Eric had no issues paying attention or following written and spoken instructions. *Id.* (*citing* 252). Similarly, the ALJ found that Ms. Martinek reported Eric participated in activities requiring concentration including watching television, caring for animals, fishing, and attending

---

[3] Eric cites to *Engstrand v. Colvin* for the proposition that an "ALJ is prohibited from basing the decision on his own lay opinion of the significance of the medical data." Doc. [15] at 6; 788 F.3d 655, 660-61 (7th Cir. 2015). While an ALJ must "rely on expert opinions instead of determining the significance of particular medical findings themselves," they can discount those opinions "with 'an accurate and logical bridge' between the evidence and the ALJ's decision." *Compare Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) *with Jeske*, 955 F.3d at 593. Here, the ALJ built a logical bridge because the ALJ explained that, although Eric reported difficulty concentrating, the medical records and function reports indicated that Eric was capable of paying attention, handling tasks involving concentration, and had no memory issues, including a lack of cognitive or focal deficits. R. 19-20 (*citing* 246-54, 304, 1424, 1494, 1606, 1618, 1624, 1629, 1641, 1646, 1656).

7

events. *Id.* (*citing* 304). Next, the ALJ reviewed the medical record evidence. The record indicated Eric's thought processes were goal-directed without abnormalities. *Id.* at 19-20. During medical visits, Eric was alert and oriented (*Id.* (*citing* 1010, 1424, 1602, 1694)), his concentration was focused and attentive, and his remote, recent, and immediate memory was intact (*Id.* (*citing* 1424, 1618, 1624, 1629, 1641, 1646)). Eric's judgment and insight were fair or intact (*Id.* (*citing* 1618, 1624, 1629, 1641, 1646)), his behavior and thought content was normal, and no cognitive or focal deficits were observed (*Id.* (*citing* 1010, 1494, 1602, 1606, 1656)). Second, the ALJ examined Eric's alleged history of mental impairments when determining the RFC limitations. *Id.* at 25-26. The ALJ analyzed Eric's history of generalized anxiety disorder and major depressive disorder, as well as his multimodal treatment of medications and psychotherapy. *Id.* at 25 (*citing* 1492-97, 1617-49). The ALJ contrasted psychological examinations where Eric felt agitated, upset, downcast, fearful, anxious and worried (*Id.* (*citing* 1426-30, 1588-92)) with examinations where he was alert, fully oriented, with concentration, behavior, judgment, insight, memory and thought processes intact or within normal limits (*Id.* (*citing* 1010, 1491, 1494, 1602, 1606, 1618, 1624, 1629, 1641, 1646, 1656, 1694)). The ALJ stated that Eric acknowledged performing various activities that required sustained concentration, including maintaining hygiene, watching television, preparing meals, driving a vehicle, shopping for groceries, caring for pets, and attending social events. *Id.* (*citing* 238, 240, 246-54, 304, 317). The ALJ further observed Eric's symptoms improved due to medication management. *Id.* (*citing* 1619). Based on this review, the ALJ concluded that "the objective evidence suggest[s Eric] is capable of managing his psychologically based symptoms and undermine[s Eric's] allegations that his symptoms preclude him from performing basic mental work activities." *Id.* As a result, the ALJ found Eric could understand, remember and carry out simple instructions in a routine work setting with few, if any, changes. *Id.*

8

at 26. With the above analysis, the ALJ properly formed a logical bridge from the narrative and medical evidence to Eric's mental RFC assessment, and it is also not the role of the Court to reweigh the above evidence.

Additionally, Eric purports that the ALJ's error in the one- or two-step limitation was compounded by failing to include concentration, persistence, and pace limitations that Dr. Taylor outlined in the Mental Residual Functional Capacity Assessment ("MRFCA") form. Doc. [15] at 8-9.[4] This argument centers on whether the ALJ discounted Dr. Taylor's MRFCA report answers in the section one summary conclusions – that Eric was moderately limited in his ability to: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; (2) carry out detailed instructions; and (3) maintain attention and concentration for extended periods. *Id.*; R. 84-86. Both parties make arguments regarding whether the section one checkbox or worksheet portion of the MRFCA can be considered and if the findings need translated into the section three functional capacity assessment. Doc. [15] at 8-9; Doc. [21] at 6-9; Doc. [22] at 4-6. These arguments are unnecessary. As explained above, an ALJ can discount an opinion if it is not supported by the medical record evidence. *Reynolds*, 25 F.4th at 473. Here, the ALJ grappled with the function report evidence that Eric had trouble concentrating for longer than

---

[4] Eric repeatedly relies on *Yurt v. Colvin* in support of his argument that the ALJ failed to grapple with Eric's limitations in concentration, persistence, and pace. 758 F.3d 850 (7th Cir. 2014). That case is inapposite to the facts here. As noted by the Seventh Circuit, only limitations *supported by the medical record* must be incorporated into the hypothetical posed to the VE and the ALJ's RFC assessment. *Yurt*, 758 F.3d at 857. In *Yurt*, limitations in concentration, persistence, and pace that were supported by the medical record were omitted from both the hypothetical posed to the VE and the RFC. *Id.* at 857-58. In comparison, here, the ALJ explained how Eric's limitations in concentration, persistence, and pace were only partially supported by the medical record. R. 19-20, 25-26. As discussed, the ALJ considered the evidence for and against Eric's mental limitations and only included limitations supported by the record in the hypothetical to the VE and the RFC assessment. *Id.* The Court finds the ALJ sufficiently outlined their reasoning.

10- to 15-minutes and required reminders to take medication. *Id.* at 19 (*citing* 249, 252, 302, 305, 315, 318)). The ALJ contrasted the function reports with medical record evidence of normal memory, concentration, and cognitive functioning. *Id.* at 25-26 (*citing* 1010, 1494, 1602, 1618, 1624, 1629, 1641, 1646, 1656, 1694). The ALJ further reviewed Eric's daily activities watching television, feeding and caring for his cat, preparing daily personal meals, driving, grocery shopping, and attending events, which also indicated an ability for normal cognitive function and an ability to concentrate. *Id.* at 20 (*citing* 246-54, 304). After weighing the record evidence, the ALJ concluded Eric could understand, remember and carry out simple instructions in a routine work setting with few, if any, changes. *See Falls v. Berryhill*, 2018 WL 5839955, at *8 (N.D. Ill. Nov. 7, 2018) (finding logical bridge for why ALJ rejected some of the DDS consultants' restrictions). The ALJ's determination not to include further restrictions in concentration, persistence, and pace was supported by substantial evidence.

Eric further argues the ALJ's failure to account for his one- or two-step task limitation was not harmless error because it could be work preclusive. Doc. [15] at 10. In support, Eric refers to the VE testimony that being off-task 15% or more, extra breaks, productivity dropping by 20%, and need for redirections would be work preclusive. *Id.* In response, the Commissioner purports the ALJ's error is harmless based on the reasoning levels for the provided job of Cleaner-Housekeeping. Doc. [21] at 4-6. The Court agrees with the Commissioner. The Dictionary of Occupational Titles ("DOT") sets levels required for satisfactory job performance.[5] Dep't of Labor, DOT, Appendix C(III), 1991 WL 688702. As Eric agrees, courts have found reasoning level one

---

[5] The Dictionary of Occupational Titles ("DOT") assigns each job a General Educational Development ("GED") score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dep't of Labor, Dictionary of Occupational Titles, Appendix C(III), 1991 WL 688702. The GED scale is comprised of three divisions – reasoning development, mathematical development, and language development – and each division is divided into six levels. *Id.*

closely aligns with the one- or two-step limitation. *Id.* (defining reasoning level one as ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions."); Doc. [15] at 8; *James J. v. Kijakazi*, 2022 WL 558364, at *7 (N.D. Ill. Feb. 24, 2022) (omission of one- to two-step limitation was harmless error as one job identified by the VE was reasoning level one); *Angela V. v. Kijakazi*, 2022 WL 4119788, at *4 (N.D. Ill. Sept. 9, 2022) (same); *Rebeca J. v. Kijakazi*, 2023 WL 2895876, at *8 (N.D. Ill. Apr. 11, 2023) (same). Here, based on the VE's testimony, the ALJ found three jobs Eric could perform available in the national economy. R. 28-29. Those jobs were cleaner-housekeeping, routing clerk, and marker. *Id.* Cleaner-Housekeeping requires only reasoning level one. *See* DOT 323.678-014, 1991 WL 672783. This job alone has 112,800 positions available, which is a significant number. R. 48-49; *Kuhn v. Kijakazi*, 2022 WL 17546947, at *3 (7th Cir. 2022) (89,000 jobs significant); *Mitchell v. Kijakazi*, 2021 WL 3086194, at *3 (7th Cir. 2021) (30,000 jobs significant). Eric does not disagree that the job cleaner-housekeeping is available in significant numbers or that it includes one- or two-step instruction limitations. Thus, even if the ALJ's failure to account for the mental one- or two-step limitation in the RFC was an error, the error was harmless as the reasoning level of cleaner-housekeeping accounted for this limitation and is available in significant numbers. *See Ricardo M. v. Kijakazi*, 2022 WL 4356892, at *5 (N.D. Ill. Sept. 20, 2022) (error in failing to include one- or two-step limitation harmless as a level one reasoning job existed in significant numbers).

Second, Eric alleges that the ALJ failed to include Dr. Taylor's RFC limitation that Eric would work best in a setting where employment related social interactions are infrequent, brief, and largely task-specific. Doc. [15] at 11-12; Doc. [22] at 8-9. As explained, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. Here, the ALJ outlined their reasoning for limiting Eric to occasional interactions with co-

workers or supervisors, and disallowing participation in collaborative, joint projects with co-workers or supervisors. First, the ALJ found Eric has a moderate limitation in interacting with others. R. 19. The ALJ explained that Eric testified to difficulty getting along with others, irritability, and short temper due to pain which limits his ability to maintain relationships and engage in social activities. *Id.* (*citing* 251-52, 305, 318). One provider also expressed that Eric was agitated, upset, and downcast during one examination. *Id.* (*citing* 1590-91). However, the ALJ contrasted these reports with sources that observed Eric as cooperative, and able to interact appropriately with providers and examiners. *Id.* (*citing* 1010, 1424, 1494, 1602, 1606, 1618, 1624, 1629, 1641, 1646, 1656, 1694). The ALJ observed that these sources did not find any signs or evidence of irritable behavior, distractibility, psychomotor agitation, or abnormal behavior. *Id.* Additionally, "the longitudinal record does not document a pattern or history of verbal or physical altercations; disciplinary or legal action; or termination from previous employment due to problems getting along with supervisors, co-workers or other persons." *Id*. (*citing* 241, 306 (treats authority with "respect"), 319 (treats authority respectfully)). Similarly, the ALJ found Eric's statements regarding the severity of his limitations and characterization of his depression and anxiety were inconsistent with his mental health treatment history and his own statements. *Id.* at 25. The ALJ noted that Eric retained the ability to perform various tasks that required social skills including shopping in grocery stores and attending organized events. *Id.* (*citing* 238, 240, 246-54, 304, 317). Weighing the above evidence, the ALJ found Eric "can tolerate occasional interaction with co-workers or supervisors, but cannot participate in any collaborative, joint projects with co-workers or supervisors." *Id.* at 26. Additionally, the ALJ stated that Eric "cannot interact with the public." *Id.* All the above demonstrates that the ALJ built a logical bridge from the medical record evidence to the RFC assessment and minimal articulate their reasoning.

12

Further, the ALJ reduced Eric's social interactions as recommended by Dr. Taylor. Eric argues that by limiting his social exchanges to "occasional interaction with co-workers or supervisors," the ALJ contradicted Dr. Taylor's limitation. Doc. [15] at 11; Doc. [22] at 8-9. This is inaccurate. Dr. Taylor noted that Eric would "do best in a work setting where employment related social interactions are infrequent, brief and largely task-specific ([verse] collaborative)." R. 86. Based on Dr. Taylor's mental RFC finding, the ALJ crafted an RFC of the most work Eric could perform. 20 C.F.R. § 416.945(a)(1). The ALJ's RFC limited Eric's social interactions with co-workers or supervisors to those that are "occasional" with no "collaborative, joint projects." *Id.* at 21. This limitation is consistent with Dr. Taylor's finding. *Id.* at 21, 86.

However, Eric alleges the limitation to "occasional" is a term of art that holds meaning contrary to Dr. Taylor's recommendation for "infrequent, brief" contact. Doc. [22] at 8-9. Dr. Taylor did not outline a specific amount of time per day that Eric could socialize, nor use any terms of art limiting social contact. R. 86. Under the DOT, "occasional" means Eric can interact socially up to 1/3 of the workday, whereas "frequent" means exchanges are between 1/3 and 2/3 of the workday. Dep't of Labor, DOT, Appendix C(IV), 1991 WL 688702. Dr. Taylor stated social contact should be "infrequent" or "brief." R. 86. These terms are not defined. But, as frequent is between 1/3 and 2/3 of the workday and Dr. Taylor held that the social interactions should not be frequent, the limitation to occasional or less than 1/3 of the workday is in line with Dr. Taylor's RFC findings. *Id.* Thus, remand is not warranted.

## II.     Subjective Symptoms

For his second contention, Eric argues the ALJ failed to properly analyze his subjective symptoms violating SSR 16-3p. Doc. [15] at 12-15; Doc. [22] at 9-15. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective

13

medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at **5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to [their] ruling." *Benito M. v. Kijakazi*, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Eric claims the ALJ did not consider: (1) Eric's physical impairments and symptoms because of his "routine" and "conservative treatment;" (2) qualifiers and modifications to Eric's daily living; and (3) significant lines of evidence favorable to Eric. Doc. [15] at 12-15; Doc. [22]

14

at 9-15.[6, 7]

First, Eric argues the ALJ failed to provide reasoning for why several limitations were not included in the RFC. In support, Eric discusses his intermittent seizures, joint and body pain, and fatigue with lupus, and difficulty standing. Doc. [15] at 12; Doc. [22] at 14. However, the ALJ considered these symptoms in creating the RFC. First, the ALJ observed that Eric's seizures were attributed to "noncompliance with and/or missed doses of his prescribed anti-epileptic medication." R. 24 (*citing* 1008, 1049, 1077, 1593, 1605, 1611). Nevertheless, the ALJ considered the nature and unpredictability of the episodes and limited Eric's RFC accordingly. *Id.* (limiting RFC so Eric never balances, climbs ladders, ropes, or scaffolds, and avoids exposure to hazards such as moving machinery and unprotected heights). Second, the ALJ noted that Eric's lupus, joint and body pain resulted in some degree of functional limitations but not to the extent alleged. *Id.* at 22. The ALJ contrasted periods in the medical record where there were routine evaluations and medication management for joint pain. *Id.* (*citing* 730, 1421, 1500-01). The ALJ also weighed Eric's lower back pain and knee pain which caused limitations. *Id.* (*citing* 1570, 1652-56, 1660-65, 1668-73, 1679-83, 1691-96). However, the ALJ observed the treatment Eric received for his pain was conservative, including physical therapy, opioid pain medication, and epidural steroid injections. *Id.* at 23 (*citing* 1652, 1656). Moreover, the treatment allowed for 90% relief of Eric's

---

[6] In his reply brief, Eric argues the Commissioner engaged in an improper credibility assessment. Doc. [22] at 9-10. Eric explains the record included no malingering, drug-seeking behavior, or any other type of untruthfulness. *Id.* However, the Commissioner is merely noting the burden for which a Court reviews subjective symptoms. Doc. [21] at 14. As the Court outlined above, so long as the ALJ gives valid reasons for discounting symptom allegations, the Court will not disturb the finding unless it is "patently wrong." *Id.*; *McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (ALJ's credibility determination not patently wrong if there exists one valid reason for discounting). This argument is erroneous.

[7] Additionally, in his reply brief, Eric further repeats arguments regarding the ALJ's failure to include limitations for Eric's concentration, persistence, pace, interactions with others, and off-task time being work preclusive. Doc. [22] at 10-11. These arguments have already been addressed and found unpersuasive.

15

pain symptoms. *Id.* Even so, the ALJ limited Eric's RFC to light exertional work, with only occasional stooping, kneeling, crouching, and crawling, as well as occasionally climbing ramps and stairs. *Id.* at 23. Finally, the ALJ reviewed Eric's alleged difficulty standing. *Id.* at 17. The ALJ noted that a plain film study identified only mild degenerative changes of the left and right ankle and there was no evidence of a fracture, dislocation or other abnormality. *Id.* Additionally, there was no documentation in the medical record supporting any need for assistive ambulatory device. *See Love v. Kijakazi*, 2023 WL 2664009, at **3-5 (N.D. Ill. Mar. 28, 2023) (holding an ALJ properly weighed conflicting medical evidence regarding Plaintiff's use of a cane in determining the RFC limitations); *Richmond v. Chater*, 94 F.3d 647 (Table), 1996 WL 467653, at *7 n.9 (7th Cir. 1996) (A "personal decision to use a cane does not necessarily mean [Plaintiff] could not walk without one."). Thus, the ALJ did not include an assistive device in Eric's RFC, but still limited Eric to light work. R. 21. The ALJ also examined Eric's function reports which discussed his ability to maintain hygiene, care for pets and his home, and participate in organized events. *Id.* at 23. The ALJ followed 20 C.F.R. § 404.1529(c) by considering Eric's symptoms, including treatment, daily activities, and the medical record. SSR 16-3p, 2017 WL 5180304, at **5, 7-8 (Oct. 25, 2017). Accordingly, in light of the above symptom analysis, the ALJ's RFC finding was not patently wrong. While the ALJ may not have weighed the evidence in the way Eric preferred, this is not a basis for remand. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("Despite [] colorable arguments, we will not reweigh the evidence.").

Further, Eric alleges the ALJ wrongfully discounted Eric's symptoms based on his "conservative treatment." Doc. [15] at 14-15. This argument is without merit. It is proper for an ALJ to consider treatment and other measures when assessing Eric's symptoms. 20 C.F.R. § 404.1529(c). The ALJ spent time laying out Eric's hearing testimony, function reports, and the

objective medical evidence regarding Eric's treatment and symptoms. R. 16-27. The ALJ explained that Eric's responded well to treatment, including a 90% relief from pain in his lower back and radicular pain symptoms with therapeutic injections. *Id.* at 23 (*citing* 1652, 1656). Moreover, function reports indicated that Eric drives, takes care of himself, performs household chores, cares for pets, and partakes in social events. *Id.* (*citing* 235-43, 246-54, 298-307, 311-21). The ALJ weighed Eric's daily activities, symptoms, and treatment evidence against the objective medical record. The ALJ's consideration of Eric's symptoms, including treatment, was proper under 20 C.F.R. § 404.1529(c).

Second, Eric argues the ALJ did not consider the qualifiers or modifications to his daily activities. Doc. [15] at 13-14; Doc. [22] at 13-14.[8] Specifically, Eric notes his inability to continue to perform social activities such as bowling and modification of activities due to pain. *Id.* Eric also notes the ALJ cherry-picked evidence of Eric's symptoms by failing to consider his modifications, such as taking breaks while working. Doc. [15] at 14. As outlined above, the Court will not overturn a credibility determination unless it is patently wrong. *Grotts*, 27 F.4th at 1279. Eric's allegation that the ALJ did not consider qualifiers or modifications to his daily living is incorrect. The ALJ specifically discusses Eric's alleged changes in functioning:

> The claimant in Exhibit 5E did not indicate he has problems lifting, squatting, bending, standing, sitting, kneeling, talking, climbing stairs, seeing, completing tasks, following instructions, using his hands, and getting along with others. Later, in an August 11, 2020 Exhibit 22E function statement he inexplicably states he no longer bowls, races motorcycles, and has diminished capacity in all

---

[8] It is unclear in the briefing if Eric is also arguing that the ALJ equated daily activities to the ability to sustain full-time work. Doc. [15] at 13-14; Doc. [22] at 13-14. As this argument has not been properly developed it is deemed waived. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (perfunctory and underdeveloped arguments are waived). Even so, the ALJ can consider descriptions of daily activities in assessing whether the effects of an individual's impairments were credible. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Eric's daily activities were one factor the ALJ weighed when coming to their findings and determining credibility for the effects of Eric's impairments. *Id.*; R. 16-27. Thus, the Court finds this argument unconvincing.

> previously unaffected functional areas except talking. This radical alteration in capabilities takes place even though the medical records do not document any gross change in his medical status. Despite the claimant's assertions of a reversal for the worse in his ability to function, he inconsistently is still performing vigorous activities like doing yard work and washing cars.

*Id.* at 25. Here, the ALJ explained why they discounted Eric's alleged modifications and qualifiers, namely that they were not supported through the objective medical records and other narrative evidence. *Id.* While Eric may disagree with the ALJ's credibility determination of his daily activities, it was not patently wrong and does not warrant reversal.

Finally, Eric argues the ALJ failed to consider significant lines of evidence favorable to him. Doc. [22] at 12. However, as noted, perfunctory and underdeveloped arguments are deemed waived. *See Horr*, 743 F. App'x at 20. Eric does not specify exactly what lines of evidence the ALJ failed to consider. *See generally* Doc. [15], Doc. [22]. Instead, Eric vaguely argues the failure to consider evidence was fundamentally flawed leaving the ALJ to their lay interpretation of medical evidence. It is unclear to the Court what evidence Eric claims was excluded. In fact, as outlined above and contrary to Eric's assertions, the ALJ reviewed the objective medical evidence, Eric's daily activities, Eric's pain or other symptoms, Eric's treatments and medications, including side effects of the medication, and functional limitations due to pain or other symptoms. The Court finds this argument underdeveloped and deems it waived, and in any event, has no merit based on the Court's review of the ALJ's opinion as outlined above.

18

**CONCLUSION**

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [15], the Acting Commissioner's Motion for Summary Judgment [20][21] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: November 30, 2023

Sunil R. Harjani
United States Magistrate Judge